**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DR. DUSHAN KOSOVICH, | : | |
| | : | CIVIL ACTION NO. 6992-09 (JSR) |
| Plaintiff, | : | (ECF CASE) |
| | : | |
| v. | : | HON. JED S. RAKOFF, U.S.D.J. |
| | : | |
| METRO HOMES, LLC; DEAN S. | : | |
| GEIBEL; PAUL E. FRIED; DONALD J. | : | DOCUMENT FILED |
| TRUMP; THE TRUMP ORGANIZATION, | : | ELECTRONICALLY |
| INC.; UBS FINANCIAL SERVICES, INC.; | : | |
| KENNETH KAVANAGH; METRO | : | |
| HARBORSPIRE, GM. LLC. VECTOR | : | |
| URBAN RENEWAL ASSOCIATES, GM. | : | |
| LLC, | : | |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, METRO HOMES, LLC;
DEAN S. GEIBEL; PAUL FRIED; METRO HARBORSPIRE GM, LLC; VECTOR
URBAN RENEWAL ASSOCIATES GM, LLC; DONALD J. TRUMP AND THE TRUMP
ORGANIZATION, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM**

Of Counsel:
  Leo V. Leyva
  Kevin R.J. Schroth

On the Brief
  Kevin R.J. Schroth
  Nicole A. Gerritsen

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.
A Professional Corporation
900 Third Avenue
New York, New York 10022
(212) 752-8000
(646) 521-2027 Facsimile
Attorneys for Defendants Metro Homes, LLC;
Dean S. Geibel; Paul E. Fried; Metro Harborspire,
LLC; Metro Harborspire GM, LLC and Vector
Urban Renewal Associates GM, LLC


Of Counsel:
  Mayra V. Tarantino
  Jennifer Sarnelli

On the Brief
  Mayra V. Tarantino
  Jennifer Sarnelli

LITE DEPALMA GREENBERG & RIVAS, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
(973) 623-3000
(973) 623-0858 Facsimile
Attorneys for Defendants Donald J. Trump and
The Trump Organization, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL ARGUMENT ..................................................................................................... 11

I.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO DEFENDANTS. ..................... 11

II.    PLAINTIFF'S COMPLAINT FALLS FAR SHORT OF STATING A CLAIM FOR BREACH OF SECURITIES LAW. ............................................. 13

    A.    Count One Fails to Meet the Heightened Pleading Requirement of 15 U.S.C. § 78u-4(b). ............................................................................. 13

    B.    The Allegations in Count One Fail to Demonstrate a Breach of Securities Law. ....................................................................................... 17

III.    PLAINTIFF FAILS TO SATISFY EACH ELEMENT OF FRAUD AND, THEREFORE, FAILS TO STATE A CLAIM FOR FRAUD AS TO EACH DEFENDANT. ...................................................................................... 18

    A.    Plaintiff Fails to Allege Each Element of Fraud and Fails to Plead His Claim With Specificity. ................................................................... 20

    B.    Plaintiff's Fraud Claim Must Fail Because It Reiterates His Breach of Contract Claim. ................................................................................. 21

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ..................................................................................................... 22

V.    PLAINTIFF FAILS TO STATE A CLAIM FOR "MONIES LOANED" OR "MONIES HAD AND RECEIVED AND UNJUST ENRICHMENT." ....... 24

CONCLUSION ................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009) ...............................................................*passim*

*Auerbach v. Klein*, 859 N.Y.S.2d, 2008 WL 680730 ................................................................ 22

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...................................................... 11, 12, 13, 22

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996).............. 21

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp.2d 549 (S.D.N.Y. 2004) ......................19, 20

*Caniglia v. Chicago Tribune – New York News Syndicate, Inc.*, 612 N.Y.S.2d 146 (1st
   Dept. 1994)...................................................................................................................... 22

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994)........................................................................ 19

*Conley v. Gibson*, 355 U.S. 41 (1957)..................................................................................... 13

*Coyle v. Englander's*, 199 N.J. Super. 212 (App. Div. 1985) ................................................... 22

*DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242 (2d Cir. 1987)................................... 19

*In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004)........................................................ 24

*Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 49 F. Supp. 2d 298 (S.D.N.Y. 1999) ................... 24

*Gordon v. DeLaurentiis Corp.*, 529 N.Y.S.2d 777, 141 A.D.2d 435 (1988) ............................. 23

*Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F.Supp.2d 275 (S.D.N.Y. 1998) .................. 24

*Grow Co., Inc. v. Chokshi*, 2006 WL 3783519 (N.J. App. Div. Dec. 22, 2006) ........................ 22

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 1269
   (S.D.N.Y. 1991)............................................................................................................... 24

*Heller v. Goldin Restructuring Fund, L.P.*, 590 F.Supp.2d 603 (S.D.N.Y. 2008)........................ 5

*Khrakovskiy v. Denise*, 2009 WL 3380326 (D.N.J. Oct. 19, 2009) ........................................... 23

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)................................................... 16

*Marino v. Vunk*, 835 N.Y.S.2d 47, 39 A.D.3d 339 (1st Dep't 2007)......................................... 23

*Mason v. American Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003), *cert. denied*, 541 U.S. 1057
   (2004)..........................................................................................................................12, 14

45193/0033-6051757v4

*In re Omnicom Group, Inc. Sec. Litig.*, 2005 WL 735937 (S.D.N.Y. Mar. 28, 2005)............19, 20

*Rombach v. Chang*, 255 F.3d 164 (2d Cir. 2004) ....................................................... 19

*Scone Investments, L.P. v. American Third Mktg. Corp.*, No. 97 Civ. 3892 (SAS), 1998
    WL 205338 (S.D.N.Y. Apr. 28, 1998) ............................................................... 21

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002)........................................ 12

*Spain v. Deutsche Bank*, 08 Civ. 10809 (LBS), 2009 WL 3073349 (S.D.N.Y. Sept. 18
    2009) ............................................................................................................ 16

*Sultan v. Read*, 2005 WL 486732 (S.D.N.Y. Mar. 1, 2005)...................................................... 21

*USA Certified Merchs. LLC v. Koebel*, 262 F.Supp.2d 319 (S.D.N.Y.) ...................................... 19

**STATUTES**

SECURITIES ACT OF 1933, 15 U.S.C. § 77a, *et seq.* .................................................... 7,17

15 U.S.C. § 78u-4(b) .............................................................................................13, 14

**RULES**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................11, 13

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 11, 13

Rule 8 ............................................................................................................ 11

Rule 8(a) ........................................................................................................ 13

Rule 9 ........................................................................................................ 2, 20

Rule 9(b) .....................................................................................................19, 20

**REGULATIONS**

17 C.F.R. § 230.501........................................................................................... 18

17 C.F.R. § 230.501(a)(5)................................................................................... 18

17 C.F.R. § 230.506........................................................................................... 17

iii

This Joint Memorandum of Law is submitted on behalf of Defendants Metro Homes, LLC ("Metro Homes"); Harborspire; Metro Harborspire GM, LLC ("Metro GM") (improperly pleaded as Metro Harbor-Spire, GM.LLC); Vector Urban Renewal Associates GM, LLC (improperly pleaded as Vector Urban Renewal Associates, GM.LLC); Dean S. Geibel ("Geibel"); Paul E. Fried ("Fried")[1]; Donald J. Trump ("Trump"); and The Trump Organization, Inc. ("Trump Organization") (collectively, "Defendants").  Defendants jointly move to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This is a classic case of buyer's remorse, or more aptly, investor's remorse.  Dr. Dushan Kosovich invested $1,000,855.67 in Metro Harborspire, LLC, a real estate project to finance and build two residential towers of 55 and 50 floors in Jersey City, New Jersey ("Harborspire" or the "Project").  Plaintiff made his investment during a real estate boom in late 2005.  Now that the real estate market has collapsed and Plaintiff lost most, if not all of his investment, he commenced this lawsuit in a desperate attempt to recover his investment.

With no plausible factual support, Dr. Kosovich alleges that Defendants duped him.  Dr. Kosovich, however, is a seasoned and well-educated psychiatrist who had access to all the necessary information to make an informed investment decision.  Indeed, before investing in Harborspire, he executed several contracts and specifically represented he reviewed and understood the contracts, and he recognized the inherent risk in investing in the real estate market.

Plaintiff has brought a baseless suit, unsupported by facts, and riddled with conclusory statements alleging (a) breach of securities law, (b) breach of contract, (c) misrepresentation and

---

[1] Fried, a former employee of Metro Homes, has not been served and does not, by this motion, waive any defenses, consent to, acknowledge, or accept service in this action.

fraud, (d) monies loaned, and (e) monies had and received and unjust enrichment.  Plaintiff

vaguely claims Defendants violated unspecified securities laws and miserably fails to meet the

applicable pleading requirements.  Plaintiff also claims that Defendants breached a contract, but

his claim is based upon a nonexistent June 30, 2005, agreement.  The Complaint also fails to

satisfy any of the elements of fraud or the particularity pleading requirement of Rule 9.  Further,

Plaintiff's claim for "monies loaned" is a restatement of Plaintiff's contract claim that

mischaracterizes his investment as a loan.  Finally, Plaintiff's claim of unjust enrichment, an

equitable remedy, fails because it is based on express contracts.  Therefore, the Complaint should

be dismissed in its entirety with prejudice as to each of the Defendants.

## STATEMENT OF FACTS

### Plaintiff's Allegations

Dr. Kosovich's Complaint consists of a random collection of facts, which fail to assert a

viable cause of action.  Count one of the Complaint alleges a breach of "Securities Law."

(Complaint ¶¶ 12-38.)  Count one describes Dr. Kosovich as a doctor specializing in psychiatry

who is "completely naïve and uninformed as to financial matters."  (Id. ¶ 21.)  The Complaint

alleges Dr. Kosovich mortgaged his apartment to obtain the funds to invest in Harborspire and

concludes Dr. Kosovich was not a "qualified" investor.  (Id. ¶¶ 22, 24.)  Without any statutory

authority or explanation, the Complaint alleges in conclusory terms that Dr. Kosovich did not

qualify as a "sophisticated investor" under Regulation D; the "Private Placement" did not qualify

as an exemption to the filing requirements of Regulation D "of the S.E.C.;" and the "Private

Placement was an unregistered offering in violation of S.E.C.Rules [sic] and Regulations…."

(Id. ¶¶ 34-35.)  Count one, however, fails to state what statute was breached.  Likewise, it does

not explain how these allegations support a cause of action.

2

Dr. Kosovich alleges that a "Private Placement Memorandum" contained material omissions and misstatements.  (Id. ¶ 32.)  Although the Complaint references a Memorandum, dated August 1, 2005, it fails to specify if it was for Class A or Class B investors.  (Id. ¶¶ 13, 14, 23, 32, 33, 43 .)  The Complaint alleges the "Memorandum neglected and omitted to give any details of the Trump participation in the project and was misleading to the investor."  (Id. ¶ 23.)  However, in a subsequent paragraph, the Complaint states that the Memorandum refers to and explains Trump's participation in a footnote.  (Id. ¶ 33.)  The Complaint further alleges that defendants made "several partial interest payments" to Dr. Kosovich totaling more than $67,000, which was far less that what had been promised to him.  (Id. ¶¶ 28-29.)  Finally, count one concludes that Dr. Kosovich suffered approximately $1.5 million in damages.

Count two of the Complaint alleges breach of contract.  The Complaint references a June 30, 2005, agreement between Dr. Kosovich and "Metro, by way of UBS Financial…whereby Kosovich agreed to advance" "$1,000,868" to Metro Homes, Geibel, and Fried.  (Id. ¶ 36.)  However, Plaintiff did not attach the purported contract to the Complaint.

Count three of the Complaint vaguely and haphazardly alleges misrepresentation and fraud against "each" of the defendants.  (Id. ¶¶ 41-59.)  Dr. Kosovich alleges that Defendants represented to him that he would be paid 15% interest annually on the monies that he advanced.  (Id. ¶¶ 41, 57.)  The Complaint alleges those misrepresentations were calculated to induce Dr. Kosovich to invest in the Project.  (Id. ¶ 57.)  Count three also alleges that "Trump and Trump Development[2] contracted with Metro to lend the Trump name and reputation to the development to be erected as Trump Plaza." (Id. ¶47, footnote added)  Further, it alleges that "Trump permitted the promiscuous and indiscriminate use of his name and reputation to create the

---

[2] "Trump Development" is not a named defendant is this matter.

3

impression by the general public that Trump was intimately connected and involved with the Project as a principal." (Id. ¶ 48.)  Dr. Kosovich was "greatly impressed by the presence of Trump in the Project and was influenced thereby to make his investment of one million dollars plus." (Id. ¶ 49.)  Paragraphs 47-49 of count three are the only paragraphs within the Complaint that contain specific allegations against Trump.  Other than being named in the caption and listed as a party, there are no allegations against the Trump Organization.  The Complaint also alleges that "UBS and Kavanagh were aware of and participated in the misleading statements presented by Metro, Fried, and Geibel to Kosovich to influence the plain-to [sic] advance the monies to defendants." (Id. ¶ 50.)

Count four, "Monies Loaned," alleges that on June 30, 2005, Dr. Kosovich loaned to the Defendants "$1,000,800.. [sic] to be repaid in three years from the date of the advance made by plaintiff, together with interest, payable annually, at the rate of 15% per annum." (Id. ¶61.)  The Complaint fails to reference any documents supporting this purported loan.  Moreover, the Complaint fails to explain how the purported loan differs from Dr. Kosovich's investment in Harborspire, which is indisputably governed by the contracts described below to which Dr. Kosovich expressly agreed.  Count five alleges unjust enrichment in conclusory terms.  This count alleges that unspecified "defendants" received $1,000,800 from Dr. Kosovich, and that he is due that amount plus 15% interest per annum.  (Id. ¶¶ 65, 66.)

## The Project

Harborspire was created in 2005 in anticipation of an offering to generate investments in a residential and retail real estate complex consisting of two towers of 55 and 50 floors, with more than 800 residential units in Jersey City, New Jersey.  (Certification of Dean S. Geibel

4

("Geibel Cert."), Exhibit A, Tab 2 at 8.)[3]  Metro Homes was the developer of Harborspire, and

Geibel is Metro Homes' principal.  Metro GM served as Harborspire's General Manager.

Harborspire owned all of the general and limited partnership interests of Vector Urban Renewal

Associates I and Vector Urban Renewal Associates II (together, "Vector").  Vector owned the

land, 328-342 Washington Boulevard, Jersey City, New Jersey, where the Project is located.

### The Offering Binder

Investors in the Project were presented with an "Offering Binder," portions of which are

attached to the Complaint as Exhibit A, that consisted of the following documents:

> Tab 1:  Summary of Terms;
> Tab 2:  Class A Private Placement Memorandum (the "Class A Memorandum");
> Tab 3:  Class B Private Placement Memorandum (the "Class B Memorandum");
> Tab 4:  Operating Agreement and Investment Documents;
> Tab 5:  Supporting Schedules;
> Tab 6:  Site and Floor Plans;
> Tab 7:  Exhibits;
> Tab 8:  Signature Pages.

(The Offering Binder is attached to the Geibel Cert. as Exhibit A, Tabs 1 through 8.)  Tab 8 of

the Offering Binder, "Signature Pages," consisted of a selection of pages from the controlling

agreements found in Tab 2 (Class A Private Placement Memorandum), Tab 3 (Class B Private

Placement Memorandum), and Tab 4 (Operating Agreement and Investment Documents).

On or about October 24, 2005, Dr. Kosovich executed the documents found in Tab 8 of

the Offering Binder.  Specifically, he executed: (a) two signature pages for the Operating

Agreement (one for Class A membership in Harborspire and one for Class B membership

---

[3]  Defendants attach as exhibits to the Geibel Certification controlling contractual documents that are integral to or explicitly referenced in the Complaint.  *See Heller v. Goldin Restructuring Fund, L.P.*, 590 F.Supp.2d 603, 607 FN4 (S.D.N.Y. 2008) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotations omitted).

(Geibel Cert. Exh. B); (b) a Subscription Agreement for Class A membership (the "Class A Subscription") (Geibel Cert. Exh. C); (c) a substantially identical Subscription Agreement for Class B membership (the "Class B Subscription"), which included an "'Accredited Investor Status" form and a Questionnaire to Prospective Offerees (Geibel Cert. Exh. D); and (d) a W-9 taxpayer identification form (Geibel Cert. Exh. E).

## The Subscription Agreements

By executing the Class A Subscription and Class B Subscription, Dr. Kosovich agreed to the terms of the Class A Memorandum, the Class B Memorandum, and the Operating Agreement for Harborspire (together, these documents are referred to as the "Controlling Agreements").  He also expressly confirmed that those documents, along with the Offering Binder, were delivered to him.  (Geibel Cert. Exhs. A, Tab 8, C and D; see ¶ 1 in each of those Exhibits.)

## Dr. Kosovich's Representations and Warranties

By executing the Class A Subscription and Class B Subscription, Dr. Kosovich expressly agreed to numerous representations and warranties.  Initially, by executing the Controlling Agreements and questionnaire Dr. Kosovich represented he was subscribing for "Interests in the Company" for his own "risk and beneficial interest."  (Geibel Cert. Exhs. C and D ¶ 2, section b.A.)  In the questionnaire, Dr. Kosovich further represented as follows:

- He previously bought securities that were exempt from federal and state registration (through private placement offerings);[4]

- On two or more occasions, he had invested in an issuer that was a limited liability company or a limited partnership;

- His approximate annual income from all sources was "$10M+";

---

[4] This was the second time that Dr. Kosovich executed substantially identical documents and invested in a Metro Homes real estate project.  In June of 2005, Dr. Kosovich invested $200,000 in a Metro Homes project in Asbury Park, New Jersey, which resulted in a similar lawsuit.  (See Geibel Cert. Exh. F, *Kosovich v. Metro Homes, LLC, et al.*, 601607-2009 New York County.)  A decision on Defendants' motion to dismiss is pending in that suit.

6

- His approximate total assets were "$25M+";

- The source of his investment funds was savings; and

- The information in the questionnaire was "complete, true and correct…."

(Geibel Cert. Exhs. C and D ¶ 6, questions 5(b), (c), (e), (f) and (g) and 6.)

Contrary to the allegations in the Complaint, in Part III of the Class A Subscription, Dr. Kosovich represented that he was an "Accredited Investor" as that term is defined in Rule 501(a) of Regulation D of the Securities Act of 1933 as amended.  (Geibel Cert., Exh. C, Part III(1).) He specifically represented that his "individual net worth or joint net worth with [his] spouse as of [October 24, 2005 was] in excess of $1,000,000," and as of October 24, 2005, his individual income was "in excess of $200,000 in each of the two most recent years or joint income with [his spouse was] in excess of $300,000 in each of those years" and that he reasonably expected to reach the same income level in 2005.  (Id.)

The Class A Subscription and Class B Subscription contained additional representations and warranties to which Dr. Kosovich agreed when he executed the Class A Subscription and Class B Subscription.  (Exh. A, Tabs 2 and 3.)  Those detailed representations and warranties reflect the following:

- Plaintiff was furnished with the Memorandum and the Offering Binder;

- Plaintiff carefully read and understood these materials, appropriately evaluated the merits and risks of the investment, and had an opportunity to ask questions to (and get answers from) the General Manager;

- Plaintiff met the suitability standards required for this investment, as set forth in the Memorandum, and understood that the interests in Harborspire were not registered with the Securities Act of 1933, as amended (the "1933 Act") or the securities or similar laws of any state, and were offered in reliance on exemptions therefrom;

- Plaintiff recognized that the Project was a "speculative venture involving a high degree of financial risk" and that Plaintiff could bear the economic risk of losing the Investor's entire investment;

- Plaintiff had the requisite knowledge and experience in financial and business matters to be capable of evaluating the merits and risks of this investment;

- Plaintiff "received no representations, warranties or written communications with respect to the offering of Interests other than those contained in the Memorandum," and entered into the transaction "not relying upon any information other than that contained in the Offering Binder, the Memorandum, the Operating Agreement, and the results of the Investor's own independent investigation."

(Geibel Cert. Exh. A, Tab 4, Subscription Agreement, at 2-4.)

The Subscription also contains an integration clause stating the following: "This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, may be amended only by a writing executed by all of the parties, and supersedes any prior agreement between the parties with respect to the subject matter hereof." (Id. at ¶ 10.)

### The Private Placement Memorandum

On or about August 1, 2005, the Class A Memorandum and Class B Memorandum (together, the "Memoranda") were prepared for Class A and Class B investors as part of an offering of securities to raise capital to finance the Project. (Geibel Cert. Exhibit A, Tabs 2 and 3.) By executing the Class A Subscription and Class B Subscription agreements, both Class A and Class B investors explicitly state that an investor agrees to the terms of the Memoranda. (Geibel Cert. Exh. A. Tab 4, Subscription Agreement, ¶ 1.)

### The Memoranda Describe Inherent Risks of Investments in Harborspire

The Memoranda are replete with conspicuous disclosures designed to inform investors and potential investors of the high degree of risk associated with investing in Harborspire. For example, the cover page of the Private Placement states in bold:

**THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK SEE "CERTAIN RISK FACTORS" ON PAGE 30 OF THIS MEMORANDUM**

8

(Geibel Cert. Exh. A, Tabs 2 and 3 at cover pages.)  On various other pages, the following clear

and unambiguous warnings provide as follows:

> **INVESTMENT IN THE INTERESTS INVOLVES CERTAIN
> RISKS.  THE INTERESTS ARE SPECULATIVE, INVOLVE
> SUBSTANTIAL RISKS….  INVESTORS COULD LOSE ALL
> OR SUBSTANTIALLY ALL OF THEIR INVESTMENT IN
> THE COMPANY.**
> \* \* \*
> **AS WITH ANY SPECULATIVE REAL ESTATE
> INVESTMENT, THERE ARE SIGNIFICANT RISKS AND
> THERE CAN BE NO ASSURANCE OR GUARANTEE
> THAT THE COMPANY WILL MEET ITS BUSINESS OR
> INVESTMENT OBJECTIVES.**

(Geibel Cert. Exh. A, Tabs 2 and 3 at 4.)  Moreover, each of the Memoranda contains a section

titled **"CERTAIN RISK FACTORS"** that covers twelve pages describing risks associated with

investments in Harborspire.  (Id. at 30-42.)

### The General Manager's Discretion to Withhold Distributions

As the Memoranda reflect, Metro GM is the General Manager of Harborspire.  (Geibel

Cert. Exh. A, Tabs 2 and 3 at 10-11; *see also* Operating Agreement, Section I, Definitions.)  As

such, Metro GM "has complete responsibility and authority for all aspects of the Company's

business and operations, and has full discretionary investment and management authority over

the Company and its affairs."  (Id. at 11.)  Metro GM's authority includes the "sole discretion" to

determine "the timing and amount of all distributions" including whether Harborspire has

sufficient cash flow to justify distributions to Class A and Class B investors.  (Geibel Cert. Exh.

A, Tab 4, Section IV generally and Section 4.5.)

Pursuant to the Class A Memorandum, unless otherwise determined by Metro GM, Class

A investors were not entitled to receive any return on their capital contributions until the project

was completed and all condominium units were sold and closed.  (Geibel Cert. Exh. A, Tab 2 at

10.)  Even then, Class A investors would only receive a return, if any, after deducting operating

expenses, including Class B returns, and other specified costs and expenses identified in the Operating Agreement.  (Id. at 12; Tab 4, Section IV.)

Similarly, payment of distributions to Class B investors was "restricted or limited by the availability of sufficient cash flow or income…as determined by [Metro GM] in its sole discretion."  (Geibel Cert. Exh. A, Tabs 2 and 3 at 12.)  Pursuant to the Class B Memorandum, a section titled, "Distribution of Capital Proceeds," provides that Class B members will be entitled to the "Class B Preferred Return from Capital Proceeds (…as defined in the Operating Agreement) … whenever funds are available and when and as declared by the General Manager in its sole and absolute discretion."  (Id. at 10-12; *see also id*. at 19.)

## The Trump License Agreements

On or about July 20, 2005, Trump entered into a License Agreement with Metro Homes, under which Trump agreed to grant a license to Metro Homes to use the "Trump" mark to identify the project's buildings in advertising, promotional, and publicity materials. (Certification of Alan G. Garten ("Garten Cert.") ¶ 3).  This was disclosed in a footnote in each Private Placement Memorandum.  (Geibel Cert. Exh. A, Tabs 2 and 3, FN1.)  Pursuant to an Assignment and Assumption of License Agreement dated as July 30, 2007, Trump assigned his right, title, and interest in the License Agreement to Trump Marks Jersey City LLC, which was acknowledged and agreed to by Metro Homes.  (Garten Cert. ¶ 4).  Trump Organization was not a party to the License Agreement or the Assignment and Assumption Agreement.  (Garten Cert. ¶ 6).  Trump Organization had no involvement in the Project whatsoever. (Id.).

## Dr. Kosovich's Investments in Harborspire

Dr. Kosovich made two payments to Harborspire totaling $1,000,855.67 completing his investment.  (Complaint at ¶¶ 16, 17.)  Dr. Kosovich forwarded one check, dated November 9,

2005, in the amount of $900,855.67 to Harborspire, which was deposited by Harborspire on November 14, 2005.  (Geibel Cert. Exh. G.)   Dr. Kosovich forwarded a second check, dated December 21, 2005, in the amount of $100,000.00 to Harborspire, which was deposited by Harborspire on December 22, 2005.  (Id.)  By executing the Controlling Agreements, including required paper-work, and by advancing funds to Harborspire, Dr. Kosovich became a Class A and a Class B member of Harborspire.

## LEGAL ARGUMENT[5]

**I.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO DEFENDANTS.**

Plaintiff's Complaint must be dismissed because each of its five counts fails to state a claim upon which relief can be granted.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Failing to satisfy Rule 8 is grounds for dismissal for failure to state a claim pursuant to Rule 12(b)(6).

The United States Supreme Court, in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009), recently elaborated upon the pleading requirements of Rule 8(a)(2).  In *Twombly*, the Court explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  As such, "to survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S.Ct. at 14 (internal quotations omitted).

---

[5]   Defendants adopt and incorporate by reference the arguments set forth in the Memorandum of Law in Support of UBS Financial Services Inc.'s Motion to Dismiss.

In *Iqbal*, the Court's analysis begins by assuming the facts alleged in the complaint are true, only for purposes of the motion to dismiss, and further identifying those allegations in the complaint that are not entitled to an assumption of truth.  129 S.Ct. at 16.  While a court, in deciding a motion to dismiss, must generally accept as true all of the allegations contained in a complaint, a court is <u>not</u> required to accept as true legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . . ."  *Iqbal*, 129 S.Ct. at 14.  In fact, it is well-settled law that the presumption of truthfulness does <u>not</u> apply to conclusory allegations or legal conclusions.  *See Mason v. American Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003) ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.") (internal quotation marks and citations omitted), *cert. denied*, 541 U.S. 1057 (2004); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

After disregarding conclusory statements and legal conclusions, the Court considers whether the complaint states a "plausible" claim for relief.  To be "plausible on its face," the court must be able to draw the reasonable inference, from the complaint, that the defendant is responsible for the alleged misconduct.  *Id.*  The Courts in *Twombly* and *Iqbal* highlight, however, that merely pleading facts that are consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 129 S.Ct. at 14 (*citing Twombly*, 550 U.S. at 555).  To determine whether a complaint states a "plausible" claim for relief, the court must "draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 15. As the Court in *Iqbal* explained:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

12

> assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether
> they *plausibly* give rise to an entitlement to relief.

*Iqbal*, 129 S.Ct. at 15 (emphasis added).

As described in detail below, the Complaint fails to come close to meeting the requirements of Rule 8(a)(2). The Complaint is couched in conclusory allegations and "threadbare recitals" of the elements of the stated causes of action. Thus, Plaintiff has failed to set forth fair notice of what his claims are and the grounds upon which they rest. *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Therefore, Plaintiff's Complaint must be dismissed in its entirety as to Defendants Metro Homes, Geibel, Fried, Metro GM, Vector, Trump, and the Trump Organization[6] pursuant to Rule 12(b)(6).

## II.    PLAINTIFF'S COMPLAINT FALLS FAR SHORT OF STATING A CLAIM FOR BREACH OF SECURITIES LAW.

### A.    Count One Fails to Meet the Heightened Pleading Requirement of 15 U.S.C. § 78u-4(b).

To state a claim for relief for breach of securities laws, Plaintiff is required to satisfy not only the pleading requirements of Rule 8(a), but he must also meet the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"). The relevant securities law provides:

> In any private action arising under this chapter in which the
> plaintiff alleges that the defendant—
>
> (A) made an untrue statement of a material fact; or

---

[6] Other than being named in the caption and listed as a party, there are no allegations in the Complaint against Trump Organization. Plaintiff's failure to allege any facts against Trump Organization fails to satisfy the pleading requirement of Rule 8(a)(2). For this reason alone, the Complaint against Trump Organization must be dismissed in its entirety for failure to state a claim upon which relief may be granted.

45193/0033-6051757v4

>(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
>the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b).

Based on the foregoing, Plaintiff is required to show that he is entitled to relief in accordance with the standard set forth in *Twombly* and *Iqbal*, and Plaintiff must also specify: (1) each statement alleged to have been misleading, (2) the reason why the statement is misleading, and (3) for those allegations made upon information and belief, Plaintiff must state with particularity all facts on which such belief is formed.  *Id.*  In considering the sufficiency of Plaintiff's allegations, the Court is not required to accept conclusory allegations as true when deciding this motion.  *See Iqbal*, 129 S.Ct. at 14; *Mason v. American Tobacco Co.*, 346 F.3d at 39 ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.").

Plaintiff's only allegation concerning Trump is that "the aura that surrounded Trump," along with the alleged invitation by Geibel, Fried, UBS, and Kavanagh to invest in the project in return for the promised interest, convinced him to invest in the Project.  Plaintiff does not allege that Trump (or a Trump-related entity) made a representation upon which Plaintiff relied.  Absent a representation of any kind by Trump, Plaintiff's securities claim against Trump fails to state a claim.

Plaintiff's allegations regarding the other Defendants are equally deficient.  Initially, Plaintiff's conclusory allegations should be disregarded.  Absent those allegations, the Court must determine whether count one presents a plausible claim for relief.  Clearly, count one fails

14

to state a claim.  Although Plaintiff's Complaint is confusing, Plaintiff apparently attempts to

allege that each Defendant violated securities law based upon: (1) statements by Plaintiff's

"financial advisors and by the promoters of the project that he would receive the 15% interest

payment for his entire investment of $1,000,855.67" (Complaint ¶ 19); (2) representations by all

Defendants that Plaintiff's investment would be returned in three years from the date of the

advance of funds (Id. ¶ 27); and (3) the Memoranda that purportedly contained unidentified

material omissions and misstatements (which are unidentified by Plaintiff).  (Id. ¶ 32).

Here, the Complaint clearly fails to provide factual support for Plaintiff's allegations.

For example, Plaintiff does not provide any facts supporting the allegation that his unidentified

"advisors" purportedly represented that he would receive a guaranteed 15% return on his

investment or the return of his entire investment within three years.  In fact, Harborspire's

Operating Agreement grants broad discretion to the General Manager to make payments to Class

A and Class B investors based on Harborspire's cashflow and performance.  (Geibel Cert. Exh.

A, Tab 4 at Section IV.)  Therefore, Dr. Kosovich expressly agreed, as a Class B investor, that

those returns on his investment were contingent upon the Project's cashflow and performance.

(Id.)  Second, the Complaint fails to identify the purported omissions or misstatements in the

Memoranda.  Moreover, each of Plaintiff's allegations is inconsistent with the express terms of

the Controlling Agreements.

Dr. Kosovich also alleges that: (a) he was not a "qualified" or "sophisticated" investor

(Id. ¶¶ 22, 34); (b) the Memoranda misled him (Id. ¶ 23); (c) the Memoranda did not qualify as

an exemption to the filing requirements of Regulation D (Id. ¶ 34); and (d) the Memoranda were

unregistered offerings in violation of SEC Rules and Regulations.  (Id. ¶ 35.)  These allegations,

however, are nothing more than conclusory statements, and they are flatly contradicted by

15

Plaintiff's own representations and warranties in the Controlling Agreements.  Plaintiff provides

no factual support for these conclusions.  Plaintiff does not set forth how or why he was an

unqualified investor.  Plaintiff does not explain why the Memoranda did not qualify as an

exemption to the SEC filing requirements.  Nor does he explain how the Memoranda violated

SEC rules and regulations.  Additionally, Plaintiff fails to specify *each statement* alleged to have

been misleading or to explain why it was misleading.

Plaintiff is not entitled to rely upon representations purportedly made by unidentified

Defendants when those representations were flatly and repeatedly contradicted by statements in

the Offering Binder that Plaintiff received before making his investment.  *Spain v. Deutsche*

*Bank*, 08 Civ. 10809 (LBS), 2009 WL 3073349, at *3 (S.D.N.Y. Sept. 18 2009) (granting motion

to dismiss 10b-5 claim where alleged oral misrepresentations concerning investment risk were

contradicted by offering materials that plaintiff received before investing).  In fact, Exhibit A to

Plaintiff's Complaint consists of portions of the Offering Binder.

Plaintiff also fails to allege a causal connection between Defendants' alleged

misrepresentations and Plaintiff's loss.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d

Cir. 2005).  Here, Plaintiff's own Complaint concedes that he did not receive the returns on his

investment to which he claims he is entitled because the Project itself did not generate profits.

(Complaint ¶¶ 18, 25.)

Counterpoised against Plaintiff's threadbare allegations, the Controlling Agreements – to

which Dr. Kosovich agreed – concretely set forth the rights and obligations of all Class A and

Class B investors.  With that in mind, the Complaint clearly fails to exclude a "more likely

explanation[]" here:  Dr. Kosovich was eager to invest in 2005, and he did so subject to the terms

of the Controlling Agreements.  *See Iqbal*, 129 S.Ct. at 14.  Consistent with the Controlling

16

Agreements, Plaintiff expressly recognized and assumed the risk of investing in real estate. After his investment suffered, along with the majority of the real estate and financial markets, Plaintiff now seeks to recoup his losses through frivolous litigation. Given the context of the plummeting real estate market during the time frame in question and the Complaint's scant factual support, Plaintiff's allegations are simply not plausible.

Without question, count one of the Complaint "stops short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 129 S.Ct. at 14. In light of these deficiencies, count one of the Complaint must be dismissed.

### B.   The Allegations in Count One Fail to Demonstrate a Breach of Securities Law.

In addition to failing to satisfy basic pleading requirements, the allegations in the Complaint do not establish a breach of securities law because Harborspire's Memoranda complied with the relevant rules and regulations.

The Securities Act of 1933 generally requires the registration of securities with the Securities and Exchange Commission. 15 U.S.C. § 77a, *et seq.* However, there are exemptions to the registration requirement. Offers and sales of securities that satisfy 17 C.F.R. § 230.506 are exempt from the filing requirements associated with public offerings under the Securities Act.

Here, Defendants were not required to register the Memoranda with the SEC because it was an exempt offering pursuant to 17 C.F.R. § 230.506. Plaintiff has not alleged a failure to satisfy this section; rather, Plaintiff makes conclusory allegations regarding one requirement for exemption – that he did not qualify as a "sophisticated investor" under the exemptions of Regulation D. As discussed above, Plaintiff fails to provide any factual support for this legal conclusion.

More importantly, contrary to Plaintiff's innuendo, whether Plaintiff was a "sophisticated investor" is irrelevant to whether Harborspire's Private Placement was exempt from registration requirements.  The sophistication of an investor who is an "accredited investor" is irrelevant to whether a particular security is exempt from registration.  As defined in 17 C.F.R. § 230.501, an accredited investor is any person who falls into one of many categories, including "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000."  17 C.F.R. § 230.501(a)(5).

Here, Dr. Kosovich completed forms at the time of his investment representing that his net worth was more than the minimum threshold required by 17 C.F.R. § 230-501(a)(5).  First, he check-marked a blank space representing that his net worth was more than one million dollars ($1,000,000) when he executed the Class A and Class B Subscriptions.  (Geibel Cert., Exh. C.) Second, in completing his investor's questionnaire, Dr. Kosovich represented that his "approximate annual income from all sources" is "10M+," which presumably meant $10 million, and his approximate total assets were "25M+," which presumably meant $25 million.  (Id.) Plaintiff cannot plausibly recant those material representations now that it is convenient for him to assert that he is not a "sophisticated investor."

Therefore, Plaintiff's loosely assembled collection of conclusory allegations fail to state a claim for a breach of securities law, and count one must be dismissed as to each Defendant.

### III.    PLAINTIFF FAILS TO SATISFY EACH ELEMENT OF FRAUD AND, THEREFORE, FAILS TO STATE A CLAIM FOR FRAUD AS TO EACH DEFENDANT.

Plaintiff has not alleged a plausible claim for misrepresentation and fraud against any of the Defendants, and therefore, count three of the Complaint must be dismissed.

To set forth a valid claim for a fraud, a plaintiff must allege as to each defendant: (a) that defendant made a misrepresentation; (b) as to a material fact; (c) which was false; (d) and known

18

to be false by defendant; (e) that was made for the purpose of inducing plaintiff to rely on it; (f) that plaintiff did so rely; (g) in ignorance of its falsity; (h) to his detriment. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).  Moreover, a complaint alleging fraud must satisfy Rule 9(b)'s specificity requirement.  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp.2d 549, 556 (S.D.N.Y. 2004).  To satisfy Rule 9(b), a complaint must: (a) specify the statements that plaintiff contends were fraudulent; (b) identify the speaker; (c) state where and when the statements were made; and (d) explain why the statements were fraudulent.  *Id.*  Essentially, the complaint must "do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."  *In re Omnicom Group, Inc. Sec. Litig.*, 2005 WL 735937, at *4 (S.D.N.Y. Mar. 28, 2005) (*citing Rombach v. Chang*, 255 F.3d 164, 174 (2d Cir. 2004)). Additionally, in the instance where there is more than one defendant who is charged with fraud, the plaintiff must "particularize and prove *each* defendant's participation in the fraud . . . ."  *USA Certified Merchs. LLC v. Koebel*, 262 F.Supp.2d 319, 332 (S.D.N.Y.) (*citing DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (emphasis added).

Plaintiff alleges Defendants made the following representations to him regarding his investment: (1) "[P]laintiff would be paid interest on the monies advanced by him, to be paid annually;" and (2) "[Plaintiff] would be repaid his invested funds 3 years from the dated [sic] that the monies were paid to the defendants." (Complaint ¶¶ 41-42.)  Specifically, with respect to Trump, Plaintiff alleges "Trump and Trump Development contracted with Metro to lend the Trump name and reputation to the development to be erected as Trump Plaza" (Id. ¶47)  "Trump permitted the promiscuous and indiscriminate use of his name and reputation to create the impression by the general public that Trump was intimately connected and involved with the Project as a principal."  (Id. ¶ 48.)  "Plaintiff was greatly impressed by the presence of Trump in

the Project and was influenced thereby to make his investment of one million dollars plus." (Id. ¶ 49.)  Plaintiff further alleges these statements were made to induce him into investing in the Project, and they did, allegedly, induce him to invest.  (Complaint ¶ 57.)   Plaintiff concludes that he was damaged by his alleged reliance on these representations and, therefore, seeks relief in the amount of his investment plus interest at the alleged promised rate.  These barebones allegations, aside from being factually incorrect, are insufficient to sustain a cause of action for misrepresentation and fraud.

### A.     Plaintiff Fails to Allege Each Element of Fraud and Fails to Plead His Claim With Specificity.

Here, Plaintiff does not allege any of the basic elements necessary to support a claim for fraud.  He also fails to satisfy the Rule 9 pleading requirement for fraud.  First, Plaintiff fails to identify a specific misrepresentation made by any Defendant.  Accepting Plaintiff's allegations as true, Plaintiff fails to identify *how* the purported "misrepresentations" were calculated to induce Plaintiff to rely on them.  Furthermore, Plaintiff does not identify a single speaker who made a purported misrepresentation.  He is required to "particularize and prove *each* defendant's participation in the fraud."  *In re Omnicom Group*, 2005 WL 735937, at *4.  Instead, Plaintiff generally alleged "the defendants, and each of them" made representations to him.  (*See* Complaint ¶ 41.)  The Complaint's attempt to cover each Defendant with broad allegations fails to state a claim.  Plaintiff also fails to state where and when the allegedly fraudulent statements were made, which also contravenes Rule 9(b).  *See In re Bristol –Myers Squibb Sec. Litig.*, 312 F.Supp.2d at 556.

The Complaint is also deficient because Plaintiff's fraud claim specifically references the use of Trump's name, but Plaintiff fails to identify a single statement or representation made by Trump, false or otherwise, that he relied on to his detriment.  The sum and substance of

20

Plaintiff's fraud claim against Trump is that the use of the name Trump itself amounts to fraud. Such a claim is irrational, implausible, and not supported by law.

Plaintiff's fraud claim also fails for the same reasons set forth in Section II, *supra*.  *Scone Investments, L.P. v. American Third Mktg. Corp.*, No. 97 Civ. 3892 (SAS), 1998 WL 205338, at *10 (S.D.N.Y. Apr. 28, 1998).

### B.   Plaintiff's Fraud Claim Must Fail Because It Reiterates His Breach of Contract Claim.

Plaintiff's fraud claim must be dismissed because it is indistinguishable from Plaintiff's claim for breach of contract.  When a breach of contract claim and a fraud claim are alleged, the plaintiff  "must distinguish the two claims by (1) demonstrating a legal duty separate from the duty to perform under the contract; (2) establishing a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."  *Sultan v. Read*, 2005 WL 486732, at *3 (S.D.N.Y. Mar. 1, 2005).  Here, Plaintiff has not distinguished his fraud claim from his claim for breach of contract.

Plaintiff's claim for fraud derives from the Controlling Agreements that he executed when he became a Class A and Class B investor in the Project.  Plaintiff does not set forth any legal duty separate and apart from the duties contained within the Controlling Agreements. Plaintiff merely alleges Defendants failed to repay the principal of his equity investment plus interest.  These are the same allegations made by Plaintiff in support of his claim for breach of contract.  (*See* Section IV *infra*.)  Moreover, Plaintiff has not established, or even alleged, any fraudulent misrepresentation collateral or extraneous to the contract.  "Notably, an allegation that defendant made an intentionally false statement concerning its intent to fulfill its obligations under the contract does not represent a misrepresentation collateral or extraneous to the contract."  *Sultan v. Read*, 2005 WL 486732, at *3 (*citing Bridgestone/Firestone, Inc. v.*

21

*Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).  Finally, Plaintiff is not seeking any

special damages as a result of the alleged fraud that are unrecoverable in his claim for breach of

contract.  Under these facts, Plaintiff's claim for fraud must be dismissed because it merely

restates Plaintiff's contract claim.

### IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

Plaintiff has not alleged a plausible claim for breach of contract by Defendants,[7] and

therefore, count two of the Complaint must be dismissed with prejudice as to Defendants.  To

establish a claim for breach of contract, a plaintiff must show an agreement, a breach of the

agreement and damages.  *Auerbach v. Klein*, 859 N.Y.S.2d at 901, 2008 WL 680730, at *12.[8]

To withstand a motion to dismiss, a breach of contract claim must allege, in non-conclusory

language, the essential terms of the parties' contract including the specific provisions of the

contract upon which liability is predicated.  *Caniglia v. Chicago Tribune – New York News*

*Syndicate, Inc.*, 612 N.Y.S.2d 146 (1st Dept. 1994) (affirming dismissal of breach of contract

claim without leave to replead).  A contract-based claim that fails to adequately identify the

contract at issue (1) fails to give fair notice of the claims and the grounds upon which they rest;

and (2) does not raise a right above the speculative level.  *Twombly*, 550 U.S. at 555.

Plaintiff alleges he entered into an unidentified contract, by way of UBS Financial, with

Metro Homes on or about June 30, 2005.  (Complaint ¶ 36.)  Plaintiff argues this contract

---

[7] As with Plaintiff's other counts (save count three), there are no specific allegations against Trump.  Trump was not a party to any alleged agreement between Plaintiff and any Defendants.  (Complaint ¶36)  To the extent that Count two or any other Count of the Complaint can be construed to allege a cause of action against Trump, the arguments raised by the other Defendants apply to Trump with equal force.

[8] The Controlling Agreements are governed by New Jersey law, and New Jersey follows the same standard for breach of contract.  *Grow Co., Inc. v. Chokshi*, 2006 WL 3783519, at *2 (N.J. App. Div. Dec. 22, 2006) (*citing Coyle v. Englander's*, 199 N.J. Super. 212 (App. Div. 1985)).

22

provided for two things: (1) Plaintiff agreed to *advance* the sum of $1,000,868 to Metro Homes, Geibel, and Fried for a term of three years; and (2) Metro Homes, Geibel, and Fried, in turn, agreed to pay Plaintiff interest at the annual rate of fifteen percent (15%).  (Id.)

First, Plaintiff's claim is completely unsupported by reference to a contract or the terms of a contract.  For this reason alone, the Complaint fails to set forth fair notice of Plaintiff's alleged contract claim and the grounds upon which it rests.  Second, Plaintiff's vague references to the "terms" of an "advance" demonstrates that the "contract" referenced by Plaintiff in his Complaint is actually the Controlling Agreements he executed in connection with his investment in Harborspire. These Controlling Agreements indisputably governed Kosovich's $1,000,855.67 *investment* in Harborspire.

Finally, Kosovich's bare conclusory allegations that Defendants failed to repay him, causing him to suffer damages do <u>not</u> support a cause of action for breach of contract under New Jersey law or New York law.  *Marino v. Vunk*, 835 N.Y.S.2d 47, 39 A.D.3d 339 (1st Dep't 2007) (dismissing breach of contract claim where plaintiff submitted no documentation and failed to allege the precise terms entitling plaintiff to relief); *see also Khrakovskiy v. Denise*, 2009 WL 3380326, at * 10 (D.N.J. Oct. 19, 2009) (finding a lack of competent evidence regarding the damages element of a breach of contract claim where the there was no evidence of damages presented "beyond the bald conclusory statements" contained in a certification.).  The *Marino* court concluded that "[v]ague and conclusory allegations are insufficient to sustain a breach of contract cause of action.  *Id*. (*citing Gordon v. DeLaurentiis Corp.*, 529 N.Y.S.2d 777, 141 A.D.2d 435, 436 (1988)).  Accordingly, count two should be dismissed.

23

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR "MONIES LOANED" OR "MONIES HAD AND RECEIVED AND UNJUST ENRICHMENT."

Plaintiff's remaining claims for "monies loaned" (count four) and "monies had and received and unjust enrichment" (count five) similarly fail.  Plaintiff *invested* $1,000,855.67 with Harborspire—it was not a loan.  Plaintiff's investment was advanced to Harborspire along with the fully executed Controlling Agreements that defined the rights and obligations of Dr. Kosovich as a Class A and Class B investor in Harborspire.  Count four, therefore, is nothing more than a restatement of Plaintiff's other claims, and it must be dismissed.

Similarly, Defendants were not unjustly enriched at Plaintiff's expense.  Count five of Plaintiff's Complaint, for "monies had and received and unjust enrichment," alleges that Defendants have been unjustly enriched at his expense in the amount of $1,000,800.  (Complaint ¶¶ 65-67.)  Where, as here, express contracts govern the subject matter of the dispute, New York law precludes an equitable, quasi-contract claim such as unjust enrichment.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 214 n.4 (2d Cir. 2004) ("where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists."); *Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 49 F. Supp. 2d 298, 301 n.4 (S.D.N.Y. 1999) ("The quasi-contractual remedy of unjust enrichment is only available when no express contractual obligation exists.").  The existence of the Controlling Agreements, therefore, mandates that Plaintiff's unjust enrichment claim be dismissed.

Moreover, as a matter of law, Plaintiff cannot pursue damages under an unjust enrichment theory when the damages sought are duplicative of the damages sought under a contract.  *See Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F.Supp.2d 275, 312 (S.D.N.Y. 1998); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 1269, 1284 (S.D.N.Y. 1991) ("bargained-for-benefits cannot be deemed to unjustly enrich a contracting

24

party").  Plaintiff's claim of unjust enrichment seeks the same $1,000,800 plus interest that

Plaintiff seeks under count two of the Complaint, which is specifically for breach of contract.

Because the damages sought by Kosovich's unjust enrichment claims are duplicative of the

damages sought by Kosovich's contract claims, count five of the Complaint should be dismissed.

## CONCLUSION

Plaintiff's claims against Defendants Metro Homes, Metro GM, Vector, Geibel, Fried,

Trump, and Trump Organization are <u>not</u> sustainable as a matter of law.  Contrary to the

Complaint, the rights and obligations of Dr. Kosovich are clearly set forth in a series of contracts

that govern his investment in Harborspire.  The Complaint fails to allege facts sufficient to

satisfy any of the claims contained in the Complaint.  Accordingly, each count of Plaintiff's

Complaint should be dismissed with prejudice as to Defendants Metro Homes, Harborspire,

Metro GM, Vector, Geibel, Fried, Trump, and Trump Organization.

DATED:  October 30, 2009

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.
Attorneys for Defendants Metro Homes, LLC;
Dean S. Geibel; Paul E. Fried; Metro
Harborspire GM, LLC and Vector Urban
Renewal Associates GM, LLC

LITE DEPALMA GREENBERG & RIVAS,
LLC
Attorneys for Defendants Donald J. Trump and
the Trump Organization, Inc.


By:   *s/Leo V. Leyva*
  Leo V. Leyva
  Kevin R.J. Schroth
  900 Third Avenue
  New York, New York  10022
  (212) 752-8000
  (646) 521-2027 Facsimile
  lleyva@coleschotz.com
  kschroth@coleschotz.com

*By:*   *s/Jennifer Sarnelli*
  Mayra V. Tarantino (admission pending)
  Jennifer Sarnelli
  Two Gateway Center, 12th Floor
  Newark, NJ  07102
  (973) 623-3000
  (973) 623-0858 Facsimile
  mtarantino@ldgrlaw.com
  jsarnelli@ldgrlaw.com

## CERTIFICATION OF SERVICE

**KEVIN R.J. SCHROTH**, of full age certifies as follows:

1.      I am Special Counsel to the firm of Cole, Schotz, Meisel, Forman & Leonard, P.A., attorneys for Defendants Metro Homes, LLC; Dean S. Geibel; Paul E. Fried; Metro Harborspire GM, LLC and Vector Urban Renewal Associates GM, LLC, in this matter.

2.      On behalf of the above referenced Defendants and with Co-Defendants, Donald J. Trump and the Trump Organization, Inc., represented by Lite DePalma Greenberg & Rivas, LLC, on October 30, 2009, I caused the following documents to be served on counsel of record via the Southern District of New York's Electronic Filing System:  (i) Notice of Joint Motion to Dismiss Plaintiff's Complaint; (ii) Joint Memorandum of Law in Support of Defendants' Motion To Dismiss Plaintiff's Complaint; (iii) Certification of Dean S. Geibel with attached exhibits, and (iv) Certification of Alan G. Garten, upon the attorneys identified below:

> Frederick Walker, Esq.
> 220 East 67th Street
> New York, NY  10021
> Counsel for Plaintiff Dr. Dushan Kosovich
>
> Andrew J. Melnick, Esq.
> Scott W. Bulcao, Esq.
> Schindler Cohen & Hochman LLP
> 100 Wall Street, 15th Floor
> New York, New York 10005
> Counsel for Defendant UBS Financial Services Inc.

3.      I declare under penalty of perjury that the foregoing is true and correct.

_____
*s/Kevin R.J. Schroth*
Kevin R.J. Schroth

October 30, 2009

45193/0033-6051757v4