UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x 09 Civ. 6692 (JSR)
DR. DUSHAN KOSOVICH,                                                        (ECF Case0


                                                          Plaintiff,


                                           - against –


METRO HOMES, LLC.,DEAN S GEIBEL,
PAUL E. FRIED, DONALD J. LTRUMP, THE
TRUMP ORGANIZATION,INC., UBS FINAN-
CIAL SERVICES,INC.,KENNETH KAVANAGH,
METRO HARBORSPIRE,LLC.,METRO HARBOR
SPIRE,GM.,LLC., and VECTOR URBAN RENEW-
AL ASSOCIATES,LLP.,


                                                          Defendants.

-------------------------------------------------------------------x


              PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
              TO DEFENDANT, UBS FINANCIAL SERVICES INC.,
              MOTION TO DISMISS THE COMPLAINT


                                        FREDERIC WALKER
                                        Attorney for Plaintiff
                                        220  E. 67 Street
                                        New York, N.Y., 10065

                                        212-628-2864

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                                                      ii

PREMINARY STATEMENT…………………………………………………………  1

FACTS……………………………………………………………………………….   3

ARGUMENT…………………………………………………………………………  5

POINT I          Every Allegation stated in the complaint is assumed to be true……………  5

POINT II         The Private Placement Memorandum did not warrant exemption
                 from the Registration Requirements………………………………………… 6

POINT III        The Statute of Limitations for the Rule 10(b Count is not applicable………. 10

POINT IV         The pllaintiff's Loss was caused by misrepresentations by UBS………........11

POINT V          Scienter can be inferred from the facts in the complaint……………………  12

POINT VI         An implied contract was in effect………………………………………..   13

POIINT VII       The New York Martin Act did not preempt Counts of monies had and
                 received and unjust enrichment……………………………………………..14

CONCLUSION………………………………………………………………………15.

# TABLE OF AUTHORITIES

**Cases**                                                          **Page**

Bold Elec.Inc. v. City of New York……………………………………………..6
    53 F.3rd, 465 (2d. Circ. 1995)

Boin v. Quaranic, …………………………………………………………  6
    291 F.3rd,1000,1008 (7TH Circ.20020;Citing Lentherman,507 U.S.163,168
    (1993).

Iqbal v. Hasty…………………………………………………………………6
    490 F.3rd,143,159(2d Cir.2007)

Erickson v. Pardue………………………………………………………………6
    551 U.S. 89; 127 S.Ct.2197,2200(2007).

Securities and Exchange Commission v. Franklin Atlas Corp…………………..  8
    154 F.Supp.393

iii

Cases                                                                                    Page

Neuwirth Inv. Fund Ltd. v. Swanson…………………………………………….. 8
    422 F.Supp.1187 (S.D.N.Y.1975)

Securities and Exchange Commission v. Ralston Purina Co………………………...8
    346 U.S. 119, 97 L.Ed.1494

Foqorazzo vs. Lehman Bros.Inc………………………………………………..13
    --FRD—S.D.2009, WL.2390244; 08/04/2009(No.03 civ 5194(SAS).

Ernst and Ernst v. Hoshfelder……………………………………………………14
    425 U.S. 185,194

..

## PRELIMINARY STATEMENT

Plaintiff, Dr. Dushan Kosovich(("Kosovich"), has brought this action to recover the sum of $1,000,800.00, Kosovich loaned to Metro Homes, LLC., in June, 2005. Metro Homeswas later affiliated with a number of other of the defendants for the purpose of developing a large apartment complex in Jersey City, New Jersey, know as "Trump Plaza". The original principals of Metro Homes, LLC., were and continued to be defendants, Dean S. Geibel and Paul E. Fried.

Despite the plaintiff's characterization of the advance that he made to certain of thedefendants as a loan, the said defendants have taken the position that the advance was actuallyan "investment " in an private placement offering that was exempt from registration under the Securities Laws of the United States. In support of this theory, the said defendants have presented copies of  an alleged Private Placement Memorandum ("PPM") (in two

sections).The said defendants have buttressed their motion to dismiss the complaint on the basis of these writings which defendants allege was made available to the plaintiff.

Plaintiff has denied receiving copies of the Memorandum at the time that he made the advances to the defendant, Metro Homes, LLC. Instead the plaintiff takes the position that he was only furnished with a "brochure" which was primarily focused on making projections of future earnings by the plaintiff from the advance made by him. The brochure also confirms the fact that interest payments to the plaintiff were assured by these defendants.

The complaint with which the moving defendants are concerned is submitted to the Court by the defendants, together with the "brochure" which is annexed to the complaint as an Exhibit.

The complaint consists of five Causes of Action. The first of these Causes is an allegation of a 10(b) Securities violation by defendants The plaintiff alleges that he was dealing only with his investment advisor, defendant UBS FINANCIAL SERVICES, INC., ("UBS"), and its representative, defendant,KENNETH  KAVANAGH, (:Kavanagh") . Kosovich was introduced to the "Trump Plaza", by Kavanagh and UBS. These defendants represented to Kosovich that he would only be making a loan to the project and was assured an annual return of 15% on his investment. Kosovich was assured by these defendants that his money would be returned to him after the three years period, together with the promised interest.

The complaint alleges that the Private Placement Memorandum is incomplete, has not generated the profits promised in the accompanying document, the "brochure", did not contain the projections advanced by the "brochure",did not show payments made to

brokers and to Trump, and did not qualify for exempt status, but rather was an unregistered offering in violation of the Securities laws. The plaintiff was alleged to be an unsophisticated and unqualified investor who should never have been accepted into the project.

The Second Cause of Action deals with a breach of contract between plaintiff and Metro Homes, LLC. It is alleged that an agreement was made whereby plaintiff would loan the sum of $1,000,800.00 to Metro and receive interest payments for three years at the rate of 15% per annum. It is further alleged that defendant Metro breached this agreement by failing to me the payments as promised.

The Third Cause of Action is based upon common law fraud. It alleges that plaintiff was assured by defendants that he would be paid his interest of 15% from the date of his contribution even though the project was unbuilt, unsold and had no income whatsoever. Despite the lack of any income, the responsible defendants made three payments as interest to  the plaintiff, from 2006 to 2007, totaling approximately $66,000.00. No payments were forth-coming after those payments and the plaintiff has never received the return of his $1,000,800.00.

The Fourth Cause of Action is for monies loaned to the defendants by the plaintiff in the sum of $1,000,800.00, at the rate of 15%  per annum and that the same is due and owing to the plaintiff.

The Fifth  Cause of Action  is for monies had and received and unjust enrichments.The plaintiff alleges that defendants have received$1,000,800.00 from the plaintiff and  have been unjustly enriched thereby. Plaintiff claims that the defendants now owe the plaintiff the sum as alleged, $1,000,800.00, together with the interest at the rate of 15% per annum.

- 3-

## FACTS

Plaintiff, Dr. DUSHAN KOSOVICH("Kosovich"), is 83 years old and a practicing psychotherapist, with an office located in Manhattan, New York City. The doctor is foreign-born from Yugoslavia. He emigrated to America in 1946. At that time, the doctor had already received his degree as a doctor in Yugoslavia. The doctor, after emigratiang to U.S.A. and re-schooling in medical school, was permitted to practice in the State of New York and still practices there.

Kosovich established a 401(k) retirement account with defendant, UBS. UBS assigned defendant, KENNETH KAVANAGH("kavanagh") to act as Kosovich's investment advisor.Kavanagh told the doctor that he(Kavanagh) had an excellent investment opportunity for the doctor. That opportunity turned out to be a project proposed for Jersey City, New Jersey. It was to consist of two towers containing apartments to be sold as condominiums. It was also to contain some commercial units.kKTo top it all, DONALD TRUMP agreed (for a stipend)s to lend his good name and that of his organization to the project. Acccordingly, it was to bear the name"TRUMP PLAZA" It was proposed by the developers, defendants, DEAN S. GEIBEL("Geibel") and PAUL E FRIED("Fried") that they intended to raised $40,000,000.00, from the public in order to finance the project.

It was stated by Kavanagh to Kosovich that the investment would be in the form of a loan to the developers, Fried and Geibel, for a period of three years and would pay semi-annual interest on the sums advanced by Kosovich at the rate of 15% per annum. Kosovich, who was 80 years old at that time, was seeking to obtain income-producing investments to be used as the doctor's retirement fund. The doctor was carried -4-

away by the thought of this wonderful return on his money. Kosovich readily accepted the proposition offered to him even though he did not have the liquid funds to finance this loan. Kosovich mortgaged his condominium apartment to raise the $1,000,800.00, he advanced to the developers. As a result, Kosovich  is now making mortgage payments at the rate of $8,000.00, per month, without receiving the promised interest payments

The selling "brochure" provides the information,in its projection of costs as of August 1,2005, that sales commissions were paid to brokers for raising capital as well as selling the condo-miniums once the buildings were completed. Sales commissions are estimated at $17,833,660.00 for the two towers and the amount of 9,348,102.00 for the West Tower(which was completed).It can only be surmised that UBS and Kavanagh were paid commissions by the developers in obtaining funds from Dr. Kosovich. The Doctor did not pay them any commissions and has no knowledge that they received commissions, That matter is well left to discovery proceedings.

The doctor was never given any particulars of the Project, other than the "brochure". Kosovich did not receive a copy of the Private Placement Memorandum, before or after  his advance ot Metro. A copy of the PPM was sent to his attorney some three years later after being requested by Kosovich.The only communications from Metro Homes to Kosovich were two letters from Metro sent on October ,2007  and December 27, 2007, The letters stated that because of the bad economy, only one tower would be built Kosovich was also told that no further interest payment could be made by the developers.

On March 19, 2009, Kosovich sent an accounting to Metro Homes,LLC., showing the payments of interest made to Kosovich and the payments of interest that were

- 5 -

due and remained unpaid. Metro Homes, nor any of the other defendants ever responded to this accounting. Kosovich faced with the loss of $1,000,800.00 advanced to Metro Homes,LLC., commenced this litigation.

## ARGUMENT

### POINT I

### EVERY ALLEGATION STATED IN THE COMPLAINT IS ASSUMED TO BE TRUE

It goes without saying, that every allegation stated in the complaint is deemed to be true. Not only that, but the court must draw all reasonable inferences from t he allegations as true.  See Bolt Elec.Inc. v. City of New York, 53 F.3rd 465(2d Circ. 1995).

The complaint is sufficient if it gives notice of what the claim is and what are the grounds upon which the claim rests. Se  Boin v. Quaranic, 291 F. 3rd 1000, 1008 (7th Circ.2002), Citing Lentherman, 507 U.S. 163,168(1993.

Also, Iqhal v Hasty, 490 F.3rd ,143,159." Specific facts are not necessary (for a pleading that satisfies Rule 8(a)(2) "the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests"(Erickson v. Pardus,551 U.S. 89;127 S.Ct. 2197,2200(2007).

A reading of the complaint would reveal that  the plaintiff has alleged that the Private Placement Memorandum did not qualify the project for an exemption from amount of the offering was far in excess of the maximum requirements for a private offering; that  -6

the plaintiff was not a qualified investors, not having the sufficient assets, background on knowledge to qualify as such; that the plaintiffs' "Investment Advisors", defendants, UBS and Kavanagh, were to be compensated by the developers, and failed to have that degree of objectivity required to give advice to an investor. That no distribution of proceeds was rendered to the plaintiff. That the PPM was silent on payments made to brokers and others. That no explanation was given in the PPM of Trump's role in the offering and what Trump received from the developers for his participation.

It is submitted that the complaint complies with Rule 9(b) and the Private Securities Litigation Reform Act of 1995(PSLRA). The defendants have been given sufficient notice of what the plaintiff's claim is all about and the grounds upon which it rests. Whatever inferences can be drawn from the facts  presented and the allegations can be made by the court.

**POINT  II**

**THE PRIVATE PLACEMENT MEMORANDUM
DID NOT WARRANT EXEMPTION FROM
THE REGISTRATION REQUIREMENTS**

A. The Private Placement Memorandum ("PPM"),issued in the name of METRO HARBORSPIRE G.M.,LLC("Harborshpire"), is relied upon by defendant movant, UBS, for justification of Harborspire's private offering of $40,000,000.00.as an exempt offering. The PPM are Exhibits "B" and "C"of BuclaDecl. Both Memoranda are issued in the name of  defendant, Harborspire The "Brochure " annexed to the complaint as Exhibit "A" was prepared by defendant, Metro Homes,LLC., The PPM and the "Brochure" have

-8 -

been integrated by the movant.UBS, in its memorandum of law in support of the motion and are treated as one writing.As will be shown, these documents are separate and distinct.

The document characterized by movant as the "Investment Brochure" was actually received by the plaintiff. The PPM was not delivered to the plaintiff until three years after the advance of monies was made by the plaintiff to Metro Homes.

The PPM displayed as Exhibits in the defendant's moving papers is a pro forma copy of Memoranda. The PPM is an unsigned, blank copy, not signed by any of the parties to the transaction, neither the plaintiff nor any of the defendants. The name of the offeree is omitted on the front page; Part I of the Questionaire  required to be completed by the offeree, is not filled in nor submitted. There is no indication of the acceptance to the subscription by Metrospire, the general manager of the offering.

The plaintiff has denied that he ever saw a copy of the Memoranda at the time when he made the loan to the developer. The first time the plaintiff saw the Memorandum was about  four years later when the documents, after repeated demands were sent to plaintiff's counsel.

The Memoranda fail in the respect that there is not full disclosure of the transaction to the public in general and the plaintiff in particular. There is complete silence as to the distrbutiion of the proceeds of the offering. The plaintiff never knew how much money was raised by the developers. It was proposed by developers to raise some $40,000,000.00  for the project. That was a lot of money for a private offering. The amount of the offering is to be taken in consideration in determining whether or not an offering is private. Another factor to be taken into consideration is the sophistication  of the offeree in financial transactions.As has been shown, the plaintiff completely lack any financial

- 9 -

sophistication. The plaintiffs' rellance upon the defendant investment advisors is misplaced since the said advisors were paid or to be paid by the very same developer. The Brochure set the minimum investment at $100,00.00. To raise the $40,000,000.00 contemplaced by the offering, there would have to be a minimum of 400 investors.That is far in exess of the number of investors contemplated by a private offering.

The burden of proving the exemption from registration is upon the offeror. Securities and Exchange Commission v. Franklin Atlas Corp., 154 F.Supp.393;Neuwirth Inv.Fund Ltd.v.Swanson, 422 F.Supp.1187)S.D.N.Y. 1975' Securities and Exchange Commissiion vs. Ralston Purina  Co., 346 U.S. 119, 97 L.Ed.1494

There was a complete lack of access to the financial records of the developers and their subsidiaries. No accounting was ever rendered to the plaintiff. The investors were not even told how much money was raised by the offering. Since only one building was erected, the question arises, what happened to the rest of the money? The disclosure of all information to the investors is an undispensible  ingredient of any public offering seeking an exemption for registering the same.There was no such relationship between the investors and the developers as would give the investors access to necessary information for an informed investment. The drastic change in the offering by eliminating one of the high-rise buildings was never timely communicated to the investors. The investors were never given the  opportunity to withdraw from the offering after developer's decision to curtain Fifty percent of the project.

B. The Brochure

The Brochure, which is annexed to the complaint as Exhibit "A". was actually given to the plaintiff. The Brochure,which may have been intended as an-

- 10-

additional Memorandum. is not competent to serve as such. The Brochure contains

projections which are misleading and inaccurate.The prospective investor(plaintiff) was

overwhelmed by the projection that promised the lender an annualized return of 50-1/4 %.

That would be a return of 151.2% over the anticipated three year period of the loan.

It is submitted that the projections of anticipated income are misleading and

erroneous.

For example. the hypothetical investment shows:
For $1,000,000.00 investment=  $ 225,000.00 Interest
                                128,833.00 Net  Profit
                               $510,833,00
                               1,000,000.00  Investment
                              $1,510,000.00 Capital and Profits.


The net profit of $128,833.00 is misstated. The Brochure has projected

revenues of $594,851.940.00( for two buildings) and has deducted expenditures of

$465,872,004.00,giving a net balance of $285,8333.00, which is the figure reflected on the

statement But according to the Brochure, the lender would only be entitled to 40% of the net

profit and theorectically would recxeive only $114,333.00 of the net proceeds.If this figure of

$114,333.00 of anticipated profits is added to the interest of K$225,000.00, the result would

be $333,171.00, The ROI would then be only 33.9% as contracted to the 50.4% promised by

the Brochure.This is the prospect held  out to the naïve investor by his investment advisors.

The Brochure even factors in the initial investment of $1,000,000.00 as part of

the Annual Return. This is further window-dressing for the lender of the funds.

The Brochure lacks credibility in that the projections were predicated upon

the erection of two towers. Since only one building was completed, the Return on Investment

would have to be halved. That would make the net profit ptojected to be $57,167.00. Add

- 11-

that amount to the contemplated interest payment for the three year period of $225,000.00,

giving a total of  $ 282,167.00. That would work out to be return on the  contemplated loan

of 28.21%. A far cry from the projected ROI of 50.4%. The numbers projected in the

Brochure are intended to deceive the casual investor. In that respect, it succeeds.

If the Brochure was intended as a substitute for the Private Placement

Memoranda, it is seriously defective for that purpose. The Brochure does not give the

prospective investor access  to any information that would have to be contained in a formal

Registration Statement. The Brochure is merely a selling instrument and not a Registration

document to support the offering of $40,000,000.00, to an unsuspecting public.

## POINT III

### THE STATUTE OF LIMITATION FOR THE
### RULE 10(b), COUNT IS NOT APPLICABLE

As defined, 28 U.S.C.1658(b)(1), states:

"(b) a private right that involves a claim of fraud, deceit.
manipulation or contrivance in contravention of a regulatory
requirement concerning the securities law, as defined in
Securities and Exchange Act, Section 3(a)(47), may be brought
not later than

(1) 2 years after discovery of facts constitution the violation;

(2) 5 years after such violation.

The movant having raisded the time limitation in its Memorandum, has opted

to apply the 2 years Statute of Limitations to the plaintiff's Count sounding in Securities

Fraud.It is respectfully suggested that the 5 year may be more appropriate under the factual

- 12 -

circumstances.

Dr. Kosovich had rendered a statement to Metro Homes,LLC. dated as late as March 19, 2009. A copy of the account is annexed to Dr. Kosovich's affidavit which is submitted in opposistion to the defendant, UBS, Motion to Dismiss the Complaint. In that statement, Dr. Kosovich has placed the last date when interest was due as December 20, 2008. The last payment of interest received by Dr. Kosovich from the developers was for January26, 2007. The next payment would have been due on December 30,2007. At that time, it is conceded that the plaintiff should have been alerted to the fact that interest would

not be forthcoming in accordance with the promises made to Dr. Kosovich as to semi-annual payments of interest.

Any time  constraint should be reasonably dated from December 30,2007. This action was commenced in August 2009. At that time, the 2 year Statute of Limitations had not yet expired.

The 5 year Statute of Limitation dating back to the date of the fraud, namely, June, 2005. could very well be the standard for this litigation. It is conceivable and could be inferred  from the allegations in the complaint, that Kosovich was still unaware of the consequences of the fraud played upon him as late as the date when he addressed his accounting to Metro Homes,LLC. that is sdMarch 19, 2009. In any case, this action is well within the time limits applied to the Count of Securities Fraud and should be permitted to ontinue.

**POINT IV**

- 13 -

## PLAINTIFF'S LOSS WAS CAUSED
## BY MISREPRESENTATIONS  BY UBS

The loss to the plaintiff was explicitly caused by misrepresentations by defendants, UBS, and its agent, KAVANAGH. Plaintiff was convinced that he would be paid interest simi-annuallly on the monies advanced by him to the developer, Metro Homes,LLC. The assurances of interest payments were given to the plaintiff by these defendants as an absolute done deal in the form of a loan.It was the fact that these promises of regular future interest payments  for a period of three years could not be sustained by the economic realties of the developers' finances

At the time that the loan was made by the plaintiff to Metro Homes, the project had no income, nor any prospects of income or profits until the two buildings had been completed. The promises to make regular payments of interest could only be fulfilled by monies taken from the funds raised in the private offering or other contributions made to the project.The promises of payment so made by the developers to the plaintiff, induced him to advance the sums and did eventually contribute to the plaintiff's probable loss of the funds that he had advanced on the recommendation and advice of his investment counselors.

It should be noted that the three payments of interest were made at a time when there  was no cash flow and no profits to the project. Those payments would be inconsistent with and contrary to the statements in the Memoranda and Brochure that payments of interest would only be made when there was an adequate cash flow to the project. See, Foqorazzo v. Lehman Bros.Inc. ---FRD---S.D.2009,WL2390244. 08/04/2009(No.03 civ 5194(SAS)

- 14 -

**POINT V**

**SCIENTER CAN BE INFERRED FROM THE FACTS
IN THE COMPLAINT**

The complaint adequately states facts from which it can be inferred that defendant, UBS, and its broker, Kavanagh acted recklessly and intentionally to deceive the plaintiff into making the loan to Metro. The motive and opportunity for these defendants for their actions is shown in the complaint and the annexed Brochure.

The Brochure in its projection of costs(unnumbered page) puts the amount reserved for sales commissions at $17,833,660.00. for the two buildings. It can be inferred thatsome of this amount was applied to brokers who raised the $40,000,000.00, in the private offering,or whatever amount was eventually raised by brokers and advisors.

However, since only one building was completed, the actual sales commissions that would have been paid according to the estimation would have been set at $9,348,102.00. Whatever defendants UBS and Kavanagh received for their efforts are not a matter of record before us. That information could only be disclosed after Discovery Proceedings have been  commenced. The payment of commissions to these defendants, who were ostensibly advising the plaintiff, would be a clear violation of the fiduciary duty owed to the plaintiff by these defendants. Payment of commissions to these defendants would provide a sufficient motive and opportunity for these defendants to manipulate and deceive the plaintiff. See Ernst and Ernst v. Hochfelder, 425 U.S.185,194.

The commission allegedly paid to these defendants is stated with particularity

- 15 -
**in the complant and attachmlents. Fed.R. of Civ.Proc. Sec, 9(6).**

## POINT VI

## AN IMPLIED CONTRACT WAS IN EFFECT

There was an implied contract between UBS  and plaintiff to the effect that UBS would render competent financial advice to the plaintiff as a fiduciary. The consideration given to UBS by Dr. Kosovich for this agreement, was the investment account that Kosovich maintained with UBS for his 401(k) account. The parties were not strangers acting at arms-length, but investment banker and client.

The further consideration received by UBS as a result of the contract with the plaintiff was a considerable sales commission that was paid for, indirectly, by plaintiff's advances to the developer

## POINT VII

## PLAINTIFF' CAUSES FOR
## FRAUD AND BREACH OF
## CONTRACT ARE NOT
## PREEMPTED BY MARTIN ACT

It has been held in New York, that the Martin Act does not necessarily pre-empt causes of common law fraud and for breach of contract.

**Caboora v. Babylon, 54 A.D. rd, 89 (App.Div.2[nd] Dept. 2008)** holds that where private causes of action and breach of contract may rest on some facts that would support a

- 16 -

Martin Law violation, as long as the action contains enough facts to support the traditional rule

of pleading, that would support the complaint

## CONCLUSION

The motion to dismiss the complaint should be denied and the plaintiff

be granted such other relief as may appear appropriate.


Dated: New York,N.Y.
        November 13, 2009

                                           Respectfully yours


                                           /
                                           /s/Frederic Walker_____
                                           Frederic Walker
                                           Attorney for plaintiff
                                           220 E.67 Street
                                           New York, N.Y., 1002
                                           212-628-2864